[No. 13971-1-I.   Division One.   January 21, 1986.]

THE STATE OF WASHINGTON, *Respondent,* v. DARRELL
D. MELOS, *Appellant.*

*Raymond H. Thoenig* of *Washington Appellate Defender Association,* for appellant.

*David S. McEachran, Prosecuting Attorney,* and *Randall Watts, Deputy,* for respondent.

SCHOLFIELD, A.C.J.—Darrell D. Melos appeals from the trial court's denial of his motion pursuant to CrR 3.1(f) for the expenditure of public funds for an expert psychiatric evaluation prior to sentencing. We affirm.

## FACTS

Darrell Melos was originally charged with three counts of first degree statutory rape in May 1983. Following trial and a deadlocked jury, he pleaded guilty to the lesser charge of indecent liberties. The State recommended a 10-year deferred sentence on condition that, among other things, Melos "follow all recommendations of the Northwest Treatment Associates evaluation report."

Melos was examined by Dr. Steven Wolf of Northwest Treatment Associates. Wolf determined that Melos was unacceptable for admission to the Northwest program, and recommended the sexual psychopathy program at Western State Hospital. Melos refused to comply with that suggestion, and the State agreed to modify its recommendation to allow for his admission to the treatment program of Dr. Irwin S. Dreiblatt. Defense counsel scheduled an evaluation appointment with Dreiblatt, but Melos failed to appear, complaining that, because of his indigency, he could not pay the $250 deposit Dreiblatt required.

At the sentencing hearing on October 12, 1983, the trial court agreed to postpone its decision to allow the Department of Social and Health Services to investigate and determine the availability of public funds and other appropriate treatment programs. At the subsequent hearing on October 20, 1983, no further information was provided to the court. Melos, however, brought a motion pursuant to CrR 3.1(f) to require the State to pay for Dreiblatt's evaluation. The trial court denied the motion and sentenced

Melos to prison.

Melos contends that the trial court's denial of his motion violated CrR 3.1 and former CrR 7.1, and denied him effective assistance of counsel, due process of law, and equal protection.

## EFFECTIVE ASSISTANCE OF COUNSEL

As part of an indigent defendant's constitutional right to effective assistance of counsel, the State must pay for expert services, but only when such services are necessary to an adequate defense. *State v. Mines,* 35 Wn. App. 932, 935, 671 P.2d 273 (1983). This constitutional right is no broader than the defendant's right to petition for State–paid services under CrR 3.1(f).[1] *State v. Dickamore,* 22 Wn. App. 851, 854, 592 P.2d 681 (1979). The determination of whether such services are necessary to an adequate defense is within the trial court's discretion and will not be overturned absent a clear showing of abuse. *State v. Mines, supra* at 936.

At the sentencing stage of a prosecution, CrR 7.1(a)(1) requires that before imposition of sentence the court ask the defendant if he wishes to present "any information in mitigation of punishment."[2] This rule does not, however, mandate the expenditure of public funds for psychiatric evidence, at least when such evidence is not necessary to contradict similar "adverse evidence presented by the State for sentencing purposes." *State v. Tuffree,* 35 Wn. App. 243, 250, 666 P.2d 912 (1983).

In *Tuffree,* the defendant assigned error to the trial

---

[1] With emphasis added, CrR 3.1(f) states in pertinent part that: "Counsel for a defendant who is financially unable to obtain . . . expert . . . services *necessary to an adequate defense* . . . may request them by a motion. Upon finding that the services are necessary and that the defendant is financially unable to obtain them, the court shall authorize counsel to obtain the services on behalf of the defendant." (Italics ours.)

[2] Former rule CrR 7.1 has now been adopted as CrR 7.2, with the above quoted language deleted. The defendant's right of allocution is now covered in more detail by RCW 9.94A.110.

court's refusal to authorize public funds to provide a psychiatric analysis. The defendant did not expressly rely upon CrR 7.1(a)(1), but did contend that CrR 3.1(f) requires the State to provide an indigent defendant with expert services as part of his constitutional right to effective assistance of counsel. In support of his motion at trial, defense counsel had argued that a psychiatric evaluation to determine whether the defendant was dangerous and to determine the defendant's potential for repeating the illegal behavior would assist the court in sentencing. The court held that the defendant's right to effective assistance of counsel was not violated, nor had the trial court violated CrR 7.1(a)(1) by denying the defendant's motion for expenditure of public funds, at least absent a showing that psychiatric evidence was necessary to rebut similar evidence presented by the prosecution at sentencing. *Tuffree,* at 250.

In the case at bar, an evaluation by Dr. Dreiblatt was not necessary to provide Melos with an adequate defense, since he had already pleaded guilty without a trial. In addition, since Melos did not need the psychiatric evidence to rebut similar adverse evidence presented by the State for sentencing purposes, this case does not fit within the narrow exception implicit in *Tuffree.* Consequently, the trial court's denial of the motion did not violate either CrR 3.1(f) or 7.1(a)(1).

## EQUAL PROTECTION AND DUE PROCESS

The remaining question is whether the refusal to pay for the psychiatric evaluation was violative of equal protection or due process in that, because of his indigency, Melos was otherwise denied a basic legal right or was unable to exercise a constitutional right enjoyed by others similarly situated.

The discrimination provisions of both the state and federal constitutions generally seek to secure equality of treatment for all persons similarly situated without favoritism. *Herriott v. Seattle,* 81 Wn.2d 48, 60, 500 P.2d 101 (1972). Thus, the State may not condition the exercise of a consti-

tutional right upon financial ability or deny a basic legal right because of one's poverty. *State v. Lewis,* 55 Wn.2d 665, 670, 349 P.2d 438 (1960). The requirements of due process and equal protection apply to legislative and judicial actions alike. *State v. Myers,* 6 Wn. App. 557, 566, 494 P.2d 1015, *cert. denied,* 409 U.S. 1061 (1972).

■ However, due process of law is not applicable unless one is being deprived of something to which he has a right. *Yantsin v. Aberdeen,* 54 Wn.2d 787, 345 P.2d 178 (1959). Moreover, the State is not required to eliminate all disparities between rich and poor in criminal matters but is only prohibited from engaging in invidious discrimination. *Riggins v. Rhay,* 75 Wn.2d 271, 283–84, 450 P.2d 806 (1969). In *Riggins,* the court held that a statute stating that a parolee may be represented by counsel and may present witnesses in his behalf at a parole revocation proceeding does not give an indigent parolee the right to court appointed counsel or to call witnesses at public expense, even though an affluent parolee could take advantage of this statutory entitlement. *Riggins,* at 284–85.

■ In the case at bar, Melos was not denied due process of law because of the well established principle that probation is not a matter of right but a matter of grace or privilege. *State v. Joy,* 34 Wn. App. 369, 661 P.2d 994 (1983). Thus, there is no constitutional guaranty of a deferred sentence. *See State v. Damon,* 16 Wn. App. 845, 559 P.2d 1365 (1977). Rather, the trial court has the discretion to grant a deferred sentence upon such terms and conditions as it shall determine, *State v. Bennett,* 35 Wn. App. 298, 300, 666 P.2d 390 (1983), and the State's sentencing recommendation is not binding upon the court. *State v. Skinner,* 3 Wn. App. 367, 368, 475 P.2d 129 (1970). Consequently, it cannot be said that Melos was denied due process. Even if he had satisfied all the conditions of the State's sentencing recommendation, the trial court was not obliged to honor the State's bargain. *State v. Skinner, supra.*

Likewise, Melos was not denied equal protection, since he was provided, at public expense, a viable alternative to

Dr. Dreiblatt's program, which he admittedly refused to consider, *i.e.,* the sexual psychopathy program at Western State Hospital. At most, Melos was denied the treatment program of his choice.

Melos submits a recent Supreme Court decision as controlling authority. *Ake v. Oklahoma,* ___ U.S. ___, 84 L. Ed. 2d 53, 105 S. Ct. 1087 (1985). In *Ake,* defense counsel informed the court at a pretrial hearing that he intended to raise an insanity defense and that in order to prepare an adequate defense, a psychiatric evaluation would be necessary. Counsel's request for funds for a psychiatric evaluation was denied. The defendant was subsequently convicted, and at the sentencing hearing the State presented psychiatric evidence of his future dangerousness.

The Court held that, when a defendant demonstrates that his sanity at the time of the offense is to be a significant factor at trial, the State must assure the defendant access to a competent psychiatrist to assist in the defense. 105 S. Ct. at 1097. The Court also held that, since the defendant's future dangerousness was a significant factor at the sentencing phase, he was also entitled to the assistance of a psychiatrist on that issue, and the denial of such assistance deprived him of due process. 105 S. Ct. at 1099.

The Court went on to specifically define the scope of the State's obligation to provide expert services for indigent defendants as follows:

> This is not to say, of course, that the indigent defendant has a constitutional right to choose a psychiatrist of his personal liking or to receive funds to hire his own. Our concern is that the indigent defendant have access to a competent psychiatrist for the purpose we have discussed, and as in the case of the provision of counsel we leave to the State the decision on how to implement this right.

105 S. Ct. at 1097.

Thus, the appellant's reliance upon *Ake v. Oklahoma* is misplaced. Unlike the defendant in *Ake,* Melos was not tried, and therefore, no sanity defense was raised. Melos

was also not confronted with the need to address adverse psychiatric evidence presented by the State at the time of sentencing. Moreover, while declining to pay for "a psychiatrist of [Melos'] personal liking", *Ake,* 105 S. Ct. at 1097, the State made psychiatric treatment available to Melos at Western State Hospital.

Our holding in this case, therefore, is entirely in accord with the United States Supreme Court's decision in *Ake v. Oklahoma, supra.* We find that the State fulfilled its obligation to provide Melos with effective assistance of counsel, and affirm the trial court's denial of his motion.

COLEMAN and WEBSTER, JJ., concur.

Reconsideration denied February 24, 1986.

Review denied by Supreme Court May 6, 1986.